**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| HUMAN POWER OF N COMPANY,<br><br>                         Plaintiff,<br><br>    v.<br><br>NATHAN BRYAN, PNEUMA NITRIC OXIDE, LLC, NITRIC OXIDE INNOVATIONS, LLC and BRYAN NITRICEUTICALS, LLC,<br><br>                         Defendants. | Civ. A. No.: 1:21-cv-00811-LY<br><br><br>**JURY DEMANDED** |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND OBTAIN A
FORENSIC IMAGE OF DEFENDANTS' HARD DRIVES AND EMAIL SYSTEMS**

Defendants Nathan Bryan ("Dr. Bryan"), Pneuma Nitric Oxide, LLC ("PNO"), Nitric Oxide Innovations, LLC ("NOI"), and Bryan Nitriceuticals, LLC ("BN") (PNO, NOI, and BN collectively the "Company Defendants," and with Dr. Bryan the "Defendants") do not oppose the substance of the discovery Plaintiff Human Power of N Company, Inc. ("HumanN" or "Plaintiff") is seeking. Defendants only oppose the way Plaintiff is seeking it. Forensically examining a party's electronic devises *requires* disclosing vast amounts of non-discoverable information, contradicting a basic premise of the Federal Rules of Civil Procedure. For that reason and others, it is available in only the most limited circumstances.

Those circumstances do not exist here. The issue, in a nutshell, is why nonparties have produced documents—primarily emails—that Defendants presumably should have but have not also produced. Since February 8, 2023, when Plaintiff made Defendants aware of the allegations in its motion, Defendants have been working (including with Plaintiff, to the extent it was willing

to share additional information) to identify and cure any such deficiencies by supplementing their productions, including with documents that were identified in additional searches of their electronic devices. Defendants did not wait for Plaintiff's motion before beginning the process of doing so.

Plaintiff, nevertheless, finds Defendants' efforts to give Plaintiff exactly what it wants—production of additional responsive documents—insufficient. Plaintiff's motion, which assumes the "samples" and "examples" in its motion are documents in Defendants' possession, custody, and control that Defendants failed to produce, extrapolates that Defendants possess larger groups of similarly unproduced documents and demands a forensic review by stacking an inference of intentional or bad faith (mis)conduct atop those assumptions, ignoring less ominous but more likely explanations, including that Plaintiff may be wrong about what Defendants have and have not produced, technical issues, and simple human error.

Defendants are already responding to and curing Plaintiff's current complaints, just as they did while fact discovery was ongoing. All previous complaints were timely resolved to Plaintiff's satisfaction, as evidenced by the fact that none were or are the subject of this or any other motion to compel. This rebuts Plaintiff's inference that a forensic review is necessary because the same Defendants who adequately resolved Plaintiff's former complaints cannot do so now.

It also illustrates the significance of the lateness of Plaintiff's motion, which violated this Court's local rules when Plaintiff filed it. Absent exceptional circumstances—which Plaintiff is not asserting—Western District of Texas Local Rule CV-16 requires early identification and resolution of discovery disputes by prohibiting discovery motions after discovery closes unless they are (1) filed within 14 days after discovery closes, and (2) relate to issues arising in the last seven days of the discovery period. *See* Western District of Texas Local Rule CV-16(e). Plaintiff's

motion complies with neither condition. Plaintiff filed it almost two months **after** the Parties'
agreed January 1, 2023 fact discovery deadline, raising document production issues that were both
identifiable months **before** fact discovery closed. Plaintiff's timing does not obviate its entitlement
to any appropriate supplemental production or Defendants' obligation of providing it. It does
suggest that an explanation by Plaintiff may be in order as to why it moved to compel in violation
of this Court's local rules on issues that were identifiable six months ago and which are similar to
issues raised and resolved without Court intervention, and which Defendants were actively in the
process of addressing and, to the extent necessary, curing when the motion was filed.

Plaintiff has no substantive right to a forensic review or the procedural right to seek one
now. Defendants are committed to and working toward getting Plaintiff the documents to which it
is entitled. A forensic review—an extraordinary request in any circumstances—is not proportional
to a need that can be met by the Parties solving their own problems or created by Plaintiff refusing
to do so. Plaintiff's motion should be denied.

<u>**ARGUMENT**</u>

**A. Plaintiff's Motion Is Late.**

The timing of Plaintiff's motion is not relevant to whether Plaintiff's complaints about
Defendants' production will be resolved. It is relevant to how and precludes the specific relief
Plaintiff is requesting.

The Parties set different deadlines for fact and expert discovery by agreement, with fact
discovery ending on January 1, 2023. *See* Exhibit 1, Dkt. #11 (Joint Report on the Parties Rule
26(f) Conference), at ¶ 3 (Parties' agreement to "stage discovery with the **<u>cutoff for fact discovery</u>**
**<u>on January 1, 2023</u>** and the expert discovery taking place immediately thereafter, with cutoff for
expert discovery coinciding with the discovery cutoff set forth in the proposed scheduling order")

(emphasis added); *see also* Exhibit 2 (Plaintiff's counsel restating agreement). Other than later-agreed dates for specific fact witness depositions, the fact discovery period was never extended. *See* Exhibit 3, Dkt. #28 (agreeing only to specific deposition dates after January 1 for specific fact witnesses).

> In this District, absent exceptional circumstances,
>
> [N]o motions relating to discovery, including motions under Rule 26(c), 29 and 37, shall be filed after the expiration of the discovery deadline unless they are filed within 14 days after the discovery deadline and pertain to conduct occurring during the final 7 days of discovery.

Western District of Texas Local Rule CV-16(e). The rule motivates parties to carefully consider and address all potential discovery disputes as they arise by prohibiting discovery motions on issues that could have—and therefore should have—been identified and either resolved by the parties or presented to (and possibly resolved by) the Court during or immediately after the discovery period.

The rule worked in this case exactly as intended—until now. At least six times during the course of fact discovery, Plaintiff raised issues with Defendants, including alleged deficiencies in the terms Defendants were using in locating responsive documents and the completeness of Defendants' productions. Exhibit 4, Declaration of Victoria Brown, at ¶ 10; Exhibits 5, 5.1, 6, 7, 8. Defendants promptly responded each time, including by searching for documents with terms Plaintiff requested. Ex. 4 at ¶ 10; Exs. 5, 7, 8; Exhibit 9, Declaration of Nathan Bryan, at ¶ 11.

Why Plaintiff did not raise its current issues—alleged document search and production deficiencies that could have been identified, raised, and resolved as many as six months before fact discovery closed—when it timely raised and resolved other similar issues is not clear. What is clear is that when Plaintiff filed a discovery motion on February 19, 2023, seven (7) weeks after the close of fact discovery, meeting neither of the criteria for doing so and with no exceptional

circumstances justifying its delay, Plaintiff violated Local Rule CV-16(e). *See* Exhibit 10, Dkt. #15, at ¶ 6; *see also Baggett v. Burnet Consol. Ind. Sch. Dist.*, No. A-06-CA-572 LY, 2008 WL 11408416, at *1 (W.D. Tex. Feb. 14, 2008) (Magistrate Judge Austin citing this provision).

### B.  Plaintiff's Motion Is Unnecessary.

Just as they have each time Plaintiff raised similar concerns in the past, Defendants began a good faith effort addressing the concerns in Plaintiff's motion before it was ever filed. *See* Ex. 4 at ¶ 12-14; Exs. 12, 14, 16. Defendants are already comprehensively searching for (through a third-party vendor), collecting, and reviewing any responsive documents not already identified from Defendants' email accounts[1] and hard drives, using the search terms detailed in Defendants' Answer to Interrogatory No. 5, plus one new name—"Chernoff"—at Plaintiff's request. Ex. 4 at ¶ 14. These efforts are designed to, and should, resolve any actual production deficiencies without the need for the forensic examination Plaintiff is demanding.

### C.  Plaintiff's Specific Examples.

Defendants current (re-)search process will remedy any deficiencies identified by the three (3) specific examples cited in Plaintiff's motion as justifying a forensic examination.

---

[1]   The email addresses being searched include: drnathanbryan@gmail.com; nathan@drnathansbryan.com; nathan@pneumanitricoxide.com; nathan@no2u.com; nsbryan@nitricoxideinnovations.com; debbie@no2u.com; debbie@pneumanitricoxide.com; susan@no2u.com; susan@pneumanitricoxide.com; sshaffer@nitricoxideinnovations.com. Ex. 4 at ¶ 12. Customer facing email accounts, including hello@n101.com, info@nitricoxideinnovations.com, and hello@no2u.com are directed into other email inboxes that are identified above. Responsive emails sent to these customer-facing email accounts are being searched for through debbie@no2u.com and debbie@pneumanitricoxide.com. *Id*. at ¶ 13. Ms. Shaffer has also conducted a new search for any and all responsive documents from susan@shaffer.com and texsuz@aol.com. Exhibit 17, Declaration of Susan Shaffer, at ¶ 6. She has also conducted a search of sshaffer@nitricoxideinnovations.com for all responsive documents related to Gemini Pharmaceuticals. *Id*. at ¶ 5.

### 1.    The 20 Document "Sample."

Plaintiff's initial February 8, 2023 email provided Defendants a sampling of 20 documents allegedly missing from Defendants' production. Exhibit 11. Defendants immediately began, and continue, investigating Plaintiff's allegations. *See* Ex. 16, Ex. A (attached to the February 17, 2023 letter). Any supplemental production of documents arising from Defendants' above-referenced search will include these documents if they are located on Defendants' devices.

### 2.    The Shaffer Emails.

Plaintiff is correct, and Defendants long ago conceded, that two email addresses used at times for business purposes by Susan Shaffer, an officer of the Company Defendants, were not, or were not adequately, searched for responsive documents. *See* Ex. 16. As Defendants explained to Plaintiff then, and explains again here, that failure was inadvertent, not intentional. *See* Ex. 16; Ex. 17 at ¶ 4, 5.

Due to inadvertence by one of Defendants' custodians, one of these email addresses (sshaffer@nitricoxideinnovations.com) was not properly searched for documents relating to "Manufacturer #1." Ex.16; Ex. 17 at ¶ 5. Shaffer used this particular email account for business related to BN prior to her having a BN email address. Ex. 17 at ¶ 5. As a result, this account was mistakenly not searched by Defendants for responsive documents relating to Manufacturer #1, which itself has no relationship with BN. *Id*. Defendants are currently searching that email account and collecting documents based on the search terms agreed upon. *Id*. at ¶ 6. Shaffer is also doing the same with her personal email account (texsuz@aol.com), which Plaintiff has also identified as allegedly being inadequately searched. *Id*. at ¶¶ 5, 6. Defendants will make a supplemental production with these documents.

### 3.      Dr. Chernoff's Statements.

Plaintiff's representations of improper conduct by Defendants relating to documents of one individual it considers a custodian—Dr. Gregory Chernoff—is simply incorrect. Plaintiff relies on selective portions of Dr. Chernoff's deposition testimony to support its claims that one Defendant, Dr. Bryan, told Dr. Chernoff he did not need to search for responsive documents.

Rather than Defendants arguing the issue, Dr. Chernoff will speak for himself:

Q. So just to be clear on the testimony, Dr. Bryan told you -- and I'm going to try to characterize what you said, but if I get if wrong just interrupt me and say that's not what I said, and if I took the time I could find it here, but Dr. Bryan told you that you did not need to search your files because any communications between him and you he already had; is that correct?

A. He didn't use those words.

Q. As best as you can recall, what did he tell you?

A. He asked me if, you know, if I had produced the records, and I assumed, I suppose wrongly so, that he had produced them.

Q. He had asked you if you had produced them?

A. He asked me -- *he told me that they were requested of me*, and I assumed that he -- that you had access to his E-mails.

Q. All right. So when he asked -- *he told you that documents were requested today; is that correct?*

A. *Yes, sir.*

Q. And after hearing that, what did you do, if anything, to search for documents?

A. I didn't have to search because I knew they were in my E-mail.

Q. *And did you turn those over to Dr. Bryan or did he tell you you did not need to?*

A. I didn't turn them over and *he did not tell me that I did not need to*.

Q. So as far as you understand, the documents you had were never turned over to Mr. Bryan or his Counsel as part of this litigation, is that your testimony?

A. I made a wrong assumption, yes. That is my belief, that you had them via the documents that were provided to you.

Q. And your belief was founded in the statement that Mr. Bryan told you that, is that correct?

A. My wrong assumption. ***In hindsight he didn't tell me that he would get them.*** I assumed that he would.

Exhibit 18, Deposition Transcript of Gregory Chernoff, M.D., at pp. 14:15-16:4 (emphasis added). In actuality, Dr. Chernoff's testimony contradicts, rather than confirms, Plaintiff's allegation that Defendants acted improperly. And despite Plaintiff's allegation, Dr. Chernoff's clarifying testimony is not "walking back" anything—correcting any mistakes, misstatements, or misimpressions as quickly as possible is what deponents are *supposed* to do. Additionally, despite any potentially mistaken assumption by Dr. Chernoff (now characterized as intentional misconduct by Plaintiff), Defendants did in fact request that Dr. Chernoff search for and turn over requested and responsive documents. Ex. 4 at ¶ 9; Ex. 9 at ¶ 16.

Plaintiff's allegations that Defendants waited until the eleventh hour to turn over any responsive documents relating to Dr. Chernoff is also incorrect. *See* Murray Affidavit at ¶ 45. Defendants had produced over 200 emails and documents with or relating to Dr. Chernoff—who was deposed in early 2023—*by early 2022*, with additional documents and emails with or relating to Dr. Chernoff contained in supplemental productions made at various times thereafter. Ex. 4 at ¶ 6. Defendants have now produced approximately 490 emails and associated or accompanying documents, or stand-alone documents, with or related to Dr. Chernoff. *Id*. Defendants, nevertheless, remain committed to working cooperatively to resolve any issues with respect to the production of documents from or relating to Dr. Chernoff—or any other deficiencies identified by Plaintiff in its motion or accompanying exhibits—Plaintiff believes may still linger.

**D.      A Forensic Review Is Disproportionate.**

Discovery *must be* "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

Imposing the unavoidable burden and expense of implementing Plaintiff's request for a forensic examination of every computer, electronic device, and email system of, or used by, every Defendant on Defendants unilaterally (especially where three of the four are start-up entities sued by a plaintiff alleging they are prohibited from engaging in any of their current commercial activities) is disproportionate to the needs of this case. Defendants have succeeded in resolving every prior discovery issue Plaintiff has raised without Court intervention and are already voluntarily addressing Plaintiff's current complaints. If past is prologue, there is no need at all. There certainly is no need—or grounds—to presume one exists.

**D.      Conclusion and Prayer**

Defendants are already re-searching all computers and email accounts for responsive documents and will cure any deficiencies in their productions identified by the Plaintiff by appropriate supplemental productions. *See* Ex. 4 at ¶¶ 12-14; Ex. 9 at ¶ 14; Ex. 17 at ¶ 6. Defendants, therefore, respectfully request that the Court deny the Plaintiff's Motion to Compel.


[SIGNATURE BLOCK ON NEXT PAGE]

Dated:          February 27, 2023                    Respectfully submitted,

                                                     **RUSTY HARDIN & ASSOCIATES LLP**

                                                     _/s/ Terry Kernell_
                                                     Russell Hardin, Jr.
                                                     *Attorney-in-Charge*
                                                     Federal I.D. No. 19424
                                                     State Bar No. 08972800
                                                     Ryan K. Higgins
                                                     Federal I.D. No. 622060
                                                     State Bar No. 24007362
                                                     Terry Kernell
                                                     Federal I.D. No. 15074
                                                     State Bar No. 11339020
                                                     Victoria Reilly Brown
                                                     Federal I.D. No. 3556975
                                                     State Bar No. 24118679

                                                     5 Houston Center
                                                     1401 McKinney Street, Suite 2250
                                                     Houston, Texas 77010
                                                     Telephone: (713) 652-9000
                                                     Facsimile: (713) 652-9800
                                                     rhardin@rustyhardin.com
                                                     rhiggins@rustyhardin.com
                                                     tkernell@rustyhardin.com
                                                     tbrown@rustyhardin.com

                                                     **ATTORNEYS FOR DEFENDANTS,
                                                     NATHAN BRYAN, PNEUMA NITRIC
                                                     OXIDE, LLC, NITRIC OXIDE
                                                     INNOVATIONS, LLC AND BRYAN
                                                     NITRICEUTICALS, LLC**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 27, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing *via* electronic mail to all counsel of record.

/s/ *Victoria R. Brown*
Victoria R. Brown
