# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| HUMAN POWER OF N COMPANY,<br><br>      Plaintiff,<br><br>  v.<br><br>NATHAN BRYAN, PNEUMA NITRIC OXIDE, LLC, NITRIC OXIDE INNOVATIONS, LLC and BRYAN NITRICEUTICALS, LLC,<br><br>      Defendants. | Civ. A. No.: 1:21-cv-00811-DII |

## PLAINTIFF'S MOTION JUSTIFYING THE AMOUNT OF ATTORNEYS FEES AWARDED IN CONNECTION WITH PLAINTIFF'S SANCTIONS MOTION

MURRAY & DI BELLA LLP
2 Grand Central Tower, 41st Fl.
140 East 45th Street
New York, NY 10017
Tel. (212) 725-2044
mjm@murraydibella.com

*Counsel for Plaintiff*
*Human Power of N Company*

Plaintiff Human Power of N Company ("Plaintiff") respectfully submits this motion for attorneys' fees awarded during the hearing on Plaintiff's Sanctions Motion[1] (Dkt. 87). The parties attempted but were unable to reach an agreement as to the amount of Plaintiff's fees.

## FACTUAL BACKGROUND

### I. Plaintiff Presents Sufficient Evidence to Warrant a Third-Party Forensic Review

During discovery, Plaintiff learned that Defendants were withholding evidence based on the fact that, in response to subpoenas served on third parties, Plaintiff received material documents responsive to Plaintiff's Requests for Production ("RFPs") that Defendants did not produce. All four of the third parties to whom Plaintiff issued subpoenas produced documents that Defendants had agreed to produce, that were proven to be at one time in their possession, but which Defendants did not produce. After Defendants' refused to engage a third party to conduct a review of their email accounts, computers, and mobile phones (collectively, "Devices"), Plaintiff was forced to file a motion to compel a forensic review ("Motion to Compel"). (Dkt 33).

Despite Defendants vigorously disputing the need for a forensic review, wherein they argued to this Court that Plaintiff merely "assumes" and "extrapolates that Defendants possess larger groups of similarly unproduced documents," this Court ordered the extraordinary remedy of a third-party forensic review of Defendants' Devices, predicated upon evidence that Defendants were improperly withholding documents. (Dkt 43) (the "Forensic Review Order").

---

[1] Capitalized terms not otherwise defined herein have the meanings set forth in the accompanying August 30, 2023 Declaration of Martin Murray ("Murray Dec.")

1

## II. The Forensic Review Proves Defendants Were Withholding Evidence

Following the independent third party review, Defendants "discovered" a remarkable 60,000 additional documents that they had previously withheld from production. These 60,000 documents – which were responsive to RFPs Plaintiff served in December 2021 and located by searching for terms Defendants claimed to have already searched – amounted to more than three times the approximately 14,768 documents Defendants had produced during the more than one and a half years since this case was commenced. They were not produced until 45 days after the discovery deadline set forth in this Court's Scheduling Order (Dkt. 15).

Upon reviewing these 60,000 documents, Plaintiff discovered that there were still material documents that it had received from third parties but not Defendants, notwithstanding the fact that the documents themselves evidenced that they were in Defendants' possession (because they were sent either to or from Defendants). (*See* August 30, 2023 Declaration of Sara Alyea ("Alyea Declaration") ¶ 3). These included documents that were created after Plaintiff had served Litigation Holds on Defendant Bryan.[2] (*Id.*) Thus, there was now proof that in addition to <u>withholding</u> evidence, Defendant Bryan had <u>destroyed</u> evidence subsequent to service of a Litigation Hold and therefore engaged in spoliation.

## III. Plaintiff Moves For Sanctions For Defendants' Spoliation of Evidence

On June 1, 2023 Plaintiff brought a motion for sanctions based on Defendants' spoliation of evidence ("Sanctions Motion") (Dkt 67). During the Sanctions Motion Hearing, Judge Lane

---

[2] Plaintiff also identified missing documents received from third parties but not Defendants that <u>predate</u> Plaintiff's service of Litigation Holds but did not raise these as a basis for its sanctions motion simply because there was already ample evidence that Mr. Bryan engaged in spoliation after receipt of the Litigation Holds. Alyea Dec. n. 2. As a matter of law, however, Mr. Bryan's obligation to preserve evidence commenced at the time he "reasonably anticipated" litigation, even prior to the receipt of Litigation Hold notices from Plaintiff.

2

stated that while he was not willing to grant Plaintiff the most severe of litigation-ending sanctions – a default judgment – he would issue an order granting Plaintiff a host of other sanctions, including an adverse inference jury instruction, an order precluding the testimony of Anthony Turturro, allowance of additional discovery, and an award of attorneys' fees. (*See* Murray Dec. Ex. 1 at 35:18 - 37:24). Judge Lane directed that the parties attempt to reach an agreement with respect to Plaintiff's fees arising from the Sanctions Motion, but in the absence of an agreement ordered Plaintiff to submit a fee application. (*Id.* at 42:20 – 43:7.)

## IV.     The Parties Meet And Confer On the Amount Of Fees Requested [3]

Plaintiff initially requested that Defendants pay it $67,224 in fees spent on the Sanctions Motion from May through July 2023. As a settlement gesture, that demand did not include fees for the time Mr. Murray, Plaintiff's lead counsel, spent post-submission preparing for the Sanctions Motion Hearing (more than $25,000). The parties' counsel engaged in good faith discussions; Plaintiff further reduced its demand to $49,000 (an approximately 53% reduction from the actual amount billed of $93,263), which Defendants rejected. (Murray Dec. ¶¶ 5-6, Ex. 2.) This motion followed.

## **ARGUMENT**

### A. The Court Should Apply the Lodestar Method

In awarding attorney's fees to sanction spoliation of evidence, courts apply the lodestar method whereby, "the district court first multiplies the number of hours reasonably expended on the litigation by a reasonable billing rate." *BalanceCXI, Inc. v. International Consulting & Research Group, LLC,* No. 1:19-CV-767-RP, 2021 WL 8017992, at *1 (W.D. Tex. Sept. 22,

---

[3] Because it is unclear whether the meet and confer discussions could be considered "settlement discussions" Plaintiff will not disclose anything said by defense counsel.

2021). "The appropriate hourly rate is defined by the market rate in the community in which the district court sits and should reflect the prevailing market rates[.]" *Singh v. RiverSource Life Ins. Co.*, No. A-19-CV-541-LY, 2023 WL 3069400, at *2 (W.D. Tex. Jan. 24, 2023).

The lodestar amount is presumptively reasonable. *Id.* at *1 n. 2. Where exceptional circumstances exist, the Court may adjust the lodestar by considering the 12 *Johnson* factors*:*

> (1) the time and labor required for litigation; (2) the novelty and complexity of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorneys had to refuse other work to litigate the case; (5) the attorneys' customary fee; (6) whether the fee was fixed or contingent; (7) whether the client or case circumstances imposed any time constraints; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case was undesirable; (11) the type of attorney-client relationship and whether the relationship was longstanding; and (12) awards made in similar cases.

*Id.; Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

### B. Murray & Di Bella Attorneys Have Significant Litigation Expertise.

Plaintiff's counsel Murray & Di Bella, LLP (the "Firm"), an experienced litigation boutique based in New York City, is comprised of six attorneys, all with significant litigation and big firm/government experience. Mr. Murray, lead counsel, has been practicing in state and federal courts throughout the United States for nearly 35 years, and is admitted in Texas, New York, and Connecticut. Associate counsel Sara Alyea has been practicing for 25 years and is admitted in New York, Pennsylvania and New Jersey. Both were trained and worked at the international law firm of Morgan Lewis; Murray for 11 years in its New York office, and Alyea for 11 years in its Philadelphia and New York offices. Murray Dec. ¶¶ 7-8.

The Firm is consistently hired by publicly traded as well as private companies and individuals throughout the United States, and has appeared on behalf of clients in state and federal courts and proceedings in California, Connecticut, Illinois, Massachusetts, Mississippi, New Jersey, New Jersey, Nevada, Oregon, Texas and Ireland. The Firm boasts a roster of clients throughout the

world, including Ireland, Switzerland, Bulgaria, England, Thailand, Hong Kong, Scotland, South Africa, Japan, Canada, Luxembourg, and Cyprus. *Id.* ¶ 9.

The Firm has successfully prosecuted and defended numerous intellectual property, breach of contract, breach of fiduciary duty, misappropriation of trade secret, and other causes of action asserted in the instant litigation. Furthermore, the Firm typically litigates seven-figure cases against some of the largest and most well-respected law firms in the United States, including recently Skadden Arps, Jones Day, ArentFox Schiff, Quinn Emanuel and Troutman Pepper. *Id*. at ¶10.  In short, the Firm is vastly experienced and well qualified. *See* accompanying declaration of Robert Rouder ("Rouder Dec.") ¶ 7 ("Murray & Di Bella is a top-notch litigation firm selected by Plaintiff specifically for their big-firm pedigree, expertise, and excellent work product.")

## C. The Reasonableness of the Firm's Billing Rates

"It is well-established that the Court may use its own expertise and judgment to independently assess the hourly rates charged for attorney's services." *BalanceCXI,* 2021 WL 8017992, at *3 *(quoting Davis v. Board of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976)). Judge Pitman recently held that fees ranging from $495 to $725 per hour resulting in a blended rate of $603.75 per hour were reasonable in the Austin area. *Id.*

Murray's standard hourly rate is $850, and Alyea's is $600. The Firm discounts both rates for Plaintiff, with Murray charging Plaintiff $600 an hour (an approximate 30% discount) and Alyea charging $480 (a 20% discount). Their blended rate for the total 169.3 hours billed on the Sanctions Motion and resulting in $93,263 charged is $551 an hour, well below rates that this Court has approved in the past. Murray Dec. ¶ 11. The Firm typically does not discount fees, with the majority of its clients paying the Firm's standard hourly rates. In addition to these discounted rates, the Firm does not bill Plaintiff for travel time to and from Austin, or for air fare, hotels or meals when Firm

5

attorneys travel between New York and Austin. *Id*. ¶¶ 12-13.

The Firm's rates underlying this Fee Application are not only aligned with, but in many instances substantially less than, the rates charged by similarly experienced Austin-based attorneys. And they are substantially less than the rates Plaintiff pays for other litigation counsel, which rates run as high as $1,300 an hour. Rouder Dec. ¶ 7.

### D. The Number of Hours Billed Were Both Reasonable And Necessitated By Defendants' Wrongdoing And Misrepresentations To This Court

The number of hours expended were directly correlated and attributed to Defendant's wrongdoing, as it was Defendant Bryan's spoliation that required Plaintiff to search over 60,000 late-produced documents to "prove a negative" – i.e., proving that particular documents produced by third parties were nowhere to be found in a universe of over 60,000 documents. This "needle in a haystack" search was exceedingly time-consuming. Murray Dec. ¶ 15.

Alyea, billing at a lower rate than Murray, did all the document searching. Due to differences in how the third parties and Defendants produced ESI, there was no simple, automated way to electronically compare documents produced by third parties and Defendants. Documents produced by different parties do not show up as exact duplicates of one another. Alyea Dec. ¶ 6. Accordingly, identifying missing documents involved a painstaking procedure.

As explained more fully in her accompanying affirmation, Alyea could not simply utilize a key word such as, for example, "hawthorne" in a search of the 60,000 documents to identify material documents that Defendants had not produced, because it would yield thousands of "hits." Rather, she began by looking at third party documents that the Firm had already identified as describing issues important to the litigation. She then verified that one of the Defendants either authored or received the third party document after a Litigation Hold. She next checked to see if Plaintiff's discovery platform, Lexbe, had identified any "near duplicates" to the third

party document within Defendants' production. Since the near duplication process is not exact, often documents identified as "near duplicates" are not the same. Thus, Alyea reviewed the content of each "near duplicate" found within Defendants' production to see if it was in fact the same as the third party document. If she found the document in Defendants' production, she moved on to another document. Upon finding that Defendants produced no near duplicates, she searched through Defendants' production for a combination of the key or unusual words[4] found in the third party document to verify that the document was truly missing. This might yield a universe in the dozens rather than thousands whose content Alyea then reviewed to ascertain whether a copy of the subpoenaed document was within Defendants' 60,000-document production. If it was, proving that Defendants did not destroy the document, she moved on to another search.

After flagging missing documents, Alyea compared them to each of Plaintiff's RFPs to each Defendant, to make sure the missing document was responsive.[5] If so, she then turned to Defendants' Responses and Objections, to ascertain whether Defendants opposed production, agreed to produce, or whether the parties reached a compromise. This was an exceedingly time-consuming. Alyea Dec. ¶¶ 6-13.

This endeavor was made even more time consuming by Defendants' own misconduct, because the essence of Defendants' opposition to the Sanctions Motion was that Plaintiff had, at

---

[4] Since parties often forward emails on later dates, the document date is not necessarily a dispositive or straight forward search field.

[5] Plaintiff initially served RFPs on each Defendant. This included 28 requests to Defendant Bryan (one of which asked him to update 36 RFPs that Plaintiff had served in another litigation), 51 RFPs to Defendant BN, 54 RFPs to Defendant PNO, and 53 RFPs to Defendant NOI. Although Plaintiff later served additional RFPs, the missing documents fell mainly within these original RFPs.

the time of the motion, identified only 6 documents (in addition to an unspecified number of documents deleted from thumb drives) that had been destroyed.[6] Defendants claimed "There is no evidence of any intentional deletion or destruction of those or any other documents beyond that fact. Nothing about those six (6) documents suggests a pattern, or an effort to get rid of 'smoking gun' documents.'" *See* Defendants' Opposition (Dkt. 68) at 6. To refute this argument, which ultimately has been proven specious and misleading, Plaintiff had to continue its search to show this Court that there were in fact additional destroyed documents. Alyea Dec. ¶¶ 18-20. That additional effort identified an additional 30[7] documents that Bryan destroyed, and that were clearly part of a pattern and effort to delete smoking guns. *See* Plaintiff's July 14 Supplement to Motion (Dkt 86, 86-1, and 86-2). As identified in the charts accompanying the Sanctions Motion (Dkt. 63-11) and Supplement (Dkt. 86-1 and 86-2) and expounded upon in Murray's oral argument to this Court during the Sanctions Motion Hearing:

> the gist of it, Judge, is that the defendant is talking about ingredients, suppliers, and sources with new manufacturers he has used. And those are what we are alleging to be our trade secrets. All the documents, those 37 plus the six, that's what they concern. These aren't documents [that] say, you know, 'I'll see you at the wedding party in a couple of weeks.' They're all relevant and material.

---

[6] Defendants argued "The sole legal basis cited for depriving Defendants of any opportunity to defend themselves in front of a jury is Plaintiff's allegation that Defendants failed to properly preserve ten (10) ESI items, as required by Federal Rule of Civil Procedure 37(e)-six (6) documents (which Plaintiff already has because they were produced by nonparties) and the unrecoverable contents of four (4) folders from the recycle bins of three thumb drives." Dkt 68 at 2.

[7] Although Plaintiff identified a sampling of 43 spoliated documents (6 in the Sanctions Motion and 37 in the July 14 Supplement), Defendants have represented to the Court that its forensic expert located 7 of the documents that Plaintiff had identified in Dkt. 86-2 as being produced from Shaffer's Devices but not Bryan's in Bryan's Devices. (Dkt. 88) Defense counsel has yet to produced or specifically identify these documents, just as it has remained silent as to the contents of the additional flash drives. Murray Dec. n. 5.

Murray Dec. Ex. 1 at 8:5-14.

The 100 hours Murray spent from May 17 through July 18, 2023 was time spent drafting the motion and reply papers, the declarations of AnnMarie Kocher, Robert Rouder, forensic expert Nicholas Marrero, and Murray himself, and selecting the exhibits for each. Nearly half the time Murray spent, 43.4 hours, was incurred <u>after</u> the Court advised that it would hold a hearing on the motion, as significant work was required to prepare for such hearing, including a detailed review of each of the 43 identified missing documents supporting the spoliation claim, including their materiality and relevance to the claims asserted, what RFP they were responsive to, Defendants' responses where they agreed to produce that category of documents (as that was a predicate to showing that the document was spoliated, because if Defendants did not agree to produce them then they could not be faulted for not producing them). Murray also prepared AnnMarie Kocher to testify if requested by the Court. In addition, Murray reviewed all caselaw cited for his oral argument and was prepared to discuss each case at whatever length the Court deemed appropriate. Murray Dec. ¶¶ 20-1. Murray also did not bill for his travel time between Austin and New York, except when he was working while on the plane. *Id.* ¶ 22.

Ironically, Plaintiff spent a lot of time to make its Sanctions Motion precisely because Defendants' wrongful conduct required Plaintiff to do so. Defendants cannot predicate their defense on there being "only" 6 destroyed documents, and then be heard to complain when Plaintiff spends the time to find 6-fold that amount to rebut Defendants' misrepresentation.

Murray also reviewed the bills and exercised billing judgment by reducing hours where appropriate, including where the recorded time might have been excessive or duplicative. *Id.* ¶ 23. Lastly, it should be noted that the Firm took material steps to keep its costs down and not duplicate efforts, as evidenced by the fact it sent one partner to attend the July 18 hearing,

9

whereas Defendants saw the need to send three partners.[8] Moreover, Rouder, an Austin-based attorney, has also reviewed the Firm's bills and judged them reasonable. Rouder Dec. ¶ 8.

Given that the Lodestar Amount is presumptively reasonable and there are no extraordinary circumstances, there is no need for the Court to increase or decrease fees by considering any of the *Johnson* factors.

Pursuant to Local Rule CV-54(b)(2), Exhibit 3 to the Murray Declaration includes a breakdown of the Sanctions Motion Fees by activity, attorney name, date and hours expended, as well as the certification that the hours were actually expended and that the billed rate is reasonable. Although Plaintiff offered Defendants a substantial, nearly $45,000 discount in an effort to reach a resolution and not to have to file this application, Defendants rejected that opportunity, thereby imposing yet again additional costs on Plaintiff. Defendants' uncooperative conduct should have consequences. They should now have to pay the full amount of the costs Plaintiff incurred.

## **CONCLUSION**

Plaintiff respectfully requests that the Court award it $93,263 in fees for the Sanctions Motion. This award is reasonable given Defendants' conduct and the difficulty in identifying the level of spoliation.

---

[8] Partners Terry Kernell, Ryan Higgins, and Rusty Hardin sat at counsel table for Defendants, whereas Mr. Murray was unaccompanied. Further cost reduction efforts are reflected in the fact that this fee application excludes all expenses billed for and paid by Plaintiff for paralegal work, Westlaw research, Lexbe document management systems, consultation and review by name partner Leza Di Bella and other attorneys on the Sanctions Motion, and the cost of Plaintiff's forensic expert Nicholas Marrero, who had to be brought in to rebut the defenses proffered by Defendants' expert Edwin Cramer. Murray Dec. ¶¶ 23, 24. Alyea confirms that 100% of the time she spent reviewing documents for the Sanctions Motion was to identify spoliated evidence only, and no part of it was spent reviewing the 60,000 documents to prepare for trial. Alyea Dec. ¶ 21.

Dated: August 30, 2023					By: /s/ *Martin J. Murray*
							Martin Murray
							Texas Bar No. 24079951

							MURRAY & DI BELLA LLP
							2 Grand Central Tower, 41st Floor
							140 East 45th Street
							New York, NY 10017
							Tel. (212) 725-2044
							mjm@murraydibella.com

							*Counsel for Plaintiff*
							*Human Power of N Company*

### CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of August 2023, I electronically filed Plaintiff's Motion Justifying The Amount Of Attorneys' Fees Awarded In Connection With Plaintiff's Sanctions Motion and all documents in support thereof with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

							/s/ *Martin J. Murray*
							Martin J. Murray